## Clamer Trust

*Wright, Mauck, Hawes & Spencer* and *Clark, Hebard & Spahr*, for petitioners.

*Ralph W. Golby*, for *Herbert Brownell, Jr.*, Attorney General of the United States, successor to the Alien Property Custodian.

HOLLAND, P. J., October 6, 1953.—This petition is concerned with 272 shares of Ajax Electric Metallurgical Corporation, which was Ajax Metal Company when the 272 shares were awarded to the trustees in trust for Guilliam H. Clamer. The name of the corporation has thus been changed but the shares of stock are the same.

Francis J. Clamer, testator, died, May 16, 1927. His will under date of October 1, 1921, probated in Montgomery County, Pa., named his wife, Margaret Clamer; his son, Guilliam H. Clamer, and Norristown Trust Company (now by merger Norristown-Penn Trust Company) executors. The same persons were named trustees of the residuary trust.

The residue of the estate was given to the trustees in trust to pay the income to testator's wife, Margaret, for life, and after her death to pay the principal to testator's four children, Guilliam H. Clamer, Gertrude M. Bauer, Alma J. Miller and Anna Marie Kelly, in equal shares. There was a provision to pay a weekly sum to a faithful servant for life, but she predeceased testator. A private waterworks was to remain indefinitely in trust after the death of the wife, but it was abandoned and need not be considered. So we have

the usual form of a trust to pay the income to a wife for life with remainder absolutely to the children in equal shares absolutely.

Although testator clearly gave the four children the principal of the trust, after the death of the widow, in equal shares, he designated certain items of property he wished to form a part of each share. Then realizing that such specific allocations to the respective shares would likely not come out exactly even as to values, he, in the next to the last item of his will (the items are all unnumbered) provided a scheme to equalize the shares. In this item he designated certain real estate and the stock of the Ajax Metal Company to be used to work out a perfect equalization.

At the death of testator, May 16, 1927, he was survived by his wife and four children above named. The widow died August 13, 1934. The daughter, Anna Marie Kelly, died March 6, 1951, leaving her surviving one child and heir, David A. Kelly. The beneficiaries of the various parts of said stock, apparent at this time, therefore, are: Guilliam H. Clamer, Gertrude M. Bauer, Alma J. Miller and David A. Kelly, all of age. By vesting order no. 2868, effective January 7, 1944, the Alien Property Custodian vested in himself all property rights and title of Gertrude M. Bauer in the trust or trusts under the will of Francis J. Clamer, deceased. By executive order no. 9788 (11 F. R. 11981) all authority, powers, duties and functions vested in the Alien Property Custodian were transferred to the Attorney General of the United States, who is respondent in this proceeding.

Gertrude M. Bauer, along with the other two surviving children and David A. Kelly, have approved in writing attached to the petition the sale of the stock prayed for. The approval of Gertrude M. Bauer, however, has no effect on this particular litigation as her interests have become vested in the Attorney Gen-

eral of the United States, who is the respondent, except that it would estop her from any complaint as to the action of the United States Government if, as and when these vested interests are turned back to her by the Government. It should be noted, however, at this point, that her rights were fixed as of October 6, 1937, the date of the approval of the schedule of distribution hereinafter mentioned, and when the Government vested her interest January 7, 1944, in the Alien Property Custodian, it obtained only what she had, as determined by this court, and no more.

When the widow died the trustees filed their account and the principal of the trust was awarded in the adjudication, under date of August 11, 1937, on the account, in equal shares to the four children. The exact wording of the award in this adjudication is:

"The shares of stock of The Ajax Metal Company are awarded back to the accountants to be held in trust under the provisions of the will for each of the children of testator in such numbers as may be necessary to equalize distributive shares. The residue of principal and the net ascertained balance of income for distribution are awarded one fourth each to Guilliam H. Clamer, Gertrude Bauer, Alma J. Miller, and Anna Marie Kelly."

The adjudication directed a schedule of distribution to be filed, in pursuance of which a schedule of distribution was filed and approved October 6, 1937, by the court, it having been approved by each of the four children. In this schedule of distribution there was awarded as part of the one-fourth share of Guilliam H. Clamer, 272 shares of Ajax Metal Company to Norristown-Penn Trust Company and Guilliam H. Clamer, trustees for Guilliam H. Clamer, at $250 a share or a total value of $68,000. Varying amounts of the stock at the same valuation per share were awarded to the same trustees on account of the other three children's

one-fourth shares, obviously for the purpose of equalizing the shares, as directed in the will.

In the next to the last dispositive item of the will testator, after clearly indicating the stock was to be used for equalization of the shares, designated the method of its accomplishment in the following language:

"I direct that my shares in the stock of The Ajax Metal Company be held in trust and that the income from same shall be distributed as earned, in proportion to their respectively assigned holdings, to my four children or to their heirs. Said shares are to be held in trust until the death of my son Guilliam or until such time as he may wish to purchase the same himself or direct the same to be sold at a price satisfactory to my heirs, but in no event at a higher price than the value of same as determined by appraisal by Day and Zimmerman or a firm of equal standing.

"At the death of my son Guilliam, said shares are to be distributed in the proportion of his assigned holdings to his heirs and of the assigned holdings of each to my other three children or to their heirs. In the event of sale, distribution of the proceeds in said proportion to each is to be made as soon thereafter as possible.

"It is my will and I direct that my son Guilliam shall until his death or until such shares may be sold, if before his death, have the sole power of voting any and all stock of The Ajax Metal Company owned by my Estate or controlled thereby."

It is plain that the purposes of testator were to use this stock to equalize the shares and to insure that Guilliam would remain in control of the company until he died or saw fit to buy the shares or sell them to the advantage of himself and the other three children. Contemplating that Guilliam might not elect to buy the shares himself or direct them to be sold to someone else,

but being mortal, that he would surely die sometime, testator provided that if they were unsold at Guilliam's death, these "assigned holdings" as to each should go to their respective heirs. But if the stock of anyone was sold in Guilliam's lifetime, "distribution of the proceeds in said proportion to each is to be made as soon thereafter as possible".

The Government contends that if Guilliam buys any of the stock, he must buy all. I can find no support for this contention in the will. Reading the will from its four corners, it is plain that, but for the desired accomplishment of the two purposes of testator above mentioned, he would have given the stock to the four children outright. It follows that when the various blocks of stock were allocated to each child, it was to all intents and purposes exclusively their stock and for the sole benefit of them primarily in their lifetime or, if the purposes of the retention had not been accomplished, in the discretion of Guilliam, completely in their lifetime, then at his or their deaths, their respective heirs took their places.

It is plain testator recognized Guilliam as the leader of his family, had every confidence in him, and intended that he should have entire control of this stock and have the sole power of voting it, and that he would treat the other three children with justice in connection therewith. It would seem that testator's confidence has been justified. Further evidence is indicated as to this stock in the last item of the will. In this item testator refers to an option given Guilliam, in an agreement between the two of October 13, 1919, to "take all or part of my holdings of The Ajax Metal Company stock", and directs that if he does not exercise it, the company shall have an option to buy all or any part of it. Obviously neither Guilliam nor the company exercised this option.

I hold, therefore, that when the different blocks of stock were set up in each of the trusts for each of the four children, in pursuance of testator's plan of equalization, that the stock in each trust belonged to each child or his or her heirs, according to the event prescribed by the testator, and that no child or his or her heirs have any interest in the trust of any other child or his or her heirs. It follows, that, at this time, Guilliam being still alive, has the right to purchase the 272 shares of stock in his trust at $250 per share, that price not being "higher than the value of same as determined by appraisal by Day and Zimmerman" and being "satisfactory" to him. At the time of the argument, the appraisal by Day & Zimmerman was not filed. It has since been filed and is of record in the case. This appraisal meets the requirements of testator. However, as stated in the brief of Guilliam H. Clamer, the provision in the will for the appraisal by Day & Zimmerman was solely for Guilliam's own protection. It was inserted in the will to prevent any child from "holding up" Guilliam by requiring too high a sales price. When purchasing stock from his own trust it clearly has no application.

It also follows that, if Guilliam purchases the shares of stock of any other child's trust, the price must be "satisfactory" to that child or her heirs (if she is dead) subject to the limit imposed by testator to be determined by Day & Zimmerman or similar firm. In the case of the trust for Gertrude M. Bauer, the United States Government is vested with the same rights, as to her trust, but it has no interest in the 272 shares of stock in question in this proceeding contained in the trust for Guilliam H. Clamer.

And now, October 6, 1953, after argument on the petition and answer, and on consideration of the arguments and briefs of counsel, the sale of the 272 shares

of the stock of the Ajax Electro Metallurgical Corporation (formerly the Ajax Metal Company), contained in the trust for Guilliam H. Clamer under the will of Francis J. Clamer, deceased, by Norristown-Penn Trust company and Guilliam H. Clamer, trustees of the trust, to Guilliam H. Clamer, individually, at a price of $250 per share, or a total of $68,000, is hereby approved and confirmed, and the trustees are authorized to consummate the sale.